UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x

In re:

THOMAS ALBERT DEMARTINO,

          Debtor-Appellant.
-------------------------------------------------------- x

RICHARD E. O'CONNELL, as Chapter 7
Trustee of the Estate of Thomas Albert
DeMartino, and CENTENNIAL INSURANCE
COMPANY,

          Plaintiffs-Appellees,

    - against -

THOMAS ALBERT DEMARTINO,

          Defendant-Appellant.
-------------------------------------------------------- x

Chapter 7 Bankruptcy
Case No. 09-40443 (JF)


Bankruptcy Adversary Proceeding
Case No. 09-01367 (JF)


**MEMORANDUM AND ORDER**

13 CV 990 (RJD)

      Thomas DeMartino appeals from the decision of the bankruptcy court (Feller, J.) denying

his motion to reopen the case and denying his Rule 60(b) motion for relief from that court's

earlier grant of summary judgment in favor of Trustee Richard O'Connell (the "Trustee") and

Centennial Insurance Company ("Centennial"). In addition, DeMartino, having terminated his

most recent attorney, moves pro se for disqualification of Centennial's counsel, Gottesman,

Wolgel, Malamy, Flynn & Weinberg, P.C. ("Gottesman Wolgel"). We affirm the bankruptcy

court and deny the motion.

## BACKGROUND

      This appeal has become a bit messy, with a jurisdictional dispute as to what issues are

properly before the Court and an ancillary dispute over what materials properly belong in the

record. For reasons that we explain _infra_. pp. 9-11, the Court resolves the jurisdictional dispute in favor of DeMartino. Furthermore, the Court decides that we need not resolve the dispute over the contents of the record because none of the materials the Trustee and Centennial object to would incline us toward reversal, see _infra_ p. 13. Accordingly, in setting forth the relevant background, the Court relies upon both the objectionable and unobjectionable portions of the record. The Court sets forth the background for DeMartino's motion to disqualify Gottesman Wolgel separately, along with our analysis of that motion, beginning _infra_ p. 19. We refer the reader to Judge Feller's May 6, 2011 Decision and Order Granting Summary Judgment for additional explication of the underlying facts and procedural history. (Summ. J. Decision and Order, ECF No. 1-3).

## I

DeMartino, a contractor and handyman, filed his petition on January 23, 2009. (Ch. 7 Pet., ECF No. 1-1). Centennial, a creditor (Ch. 7 Pet. Sch. F), objected to DeMartino's petition and commenced adversary proceedings along with the Trustee. (Am. Compl., DeMartino App. B, Ex. 13, ECF No. 11-2). In the adversary proceeding, the Trustee and Centennial claimed that DeMartino was not entitled to discharge under 11 U.S.C. § 727(a) because he did not disclose potential assets and required financial information in his petition. (_Id._ at 15-16).

Specifically, appellees pointed to three mechanic's liens totaling $307,000 that DeMartino asserted against two real properties. (Summ. J. Decision and Order 4). DeMartino did not actually assert those liens until after he filed the Chapter 7 petition. However, Schedule G of the Chapter 7 petition requires the debtor to disclose any then-existing "executory contracts," while Schedule B requires the debtor to disclose "accounts receivable" and "other liquidated debts owed to debtor." Yet DeMartino disclosed neither the underlying contracts that

would have given rise to these mechanic's liens nor the apparently substantial debts DeMartino thought owed to him and his companies for performing the work on those contracts. (Id. at 4). Similarly, the Statement of Financial Affairs in the Chapter 7 petition requires the debtor to list all suits to which he was party during the year preceding the petition. DeMartino had been named as a defendant in an action commenced in a New York court four months prior to the date of his petition. (Id. at 5). In that action, the plaintiff alleged that DeMartino had received approximately $75,000 from May 2007 through July 2008 and then transferred those funds to his wife. (Id.). But DeMartino did not disclose the existence of that action, despite disclosing six other actions to which he was party. (Ch. 7 Pet. Statement Fin. Affairs ¶ 4).

The Trustee and Centennial moved for summary judgment denying discharge. (Mot. Summ. J., DeMartino App. B, Ex. 15). DeMartino, then represented by Mr. Williams, opposed the motion. (Opp'n Summ. J., DeMartino App. B., Ex. 17). In opposition, DeMartino pointed out that Centennial, who claimed title to one of the properties (Am. Compl. 3), contended in state court that the mechanic's liens were invalid – which, if true, meant that the liens lacked "economic and legal value." (Opp'n Summ. J. ¶¶ 11-16). Bizarrely, DeMartino argued that, if Centennial was correct on that point, he could not have committed fraud in the petition, because there were in reality no contracts or work performed on that property for him to disclose in the petition, and that his therefore fraudulent assertion of liens would have occurred only in "state court." (Id. at ¶ 30). Misquoting the relevant statute, DeMartino argued that the bankruptcy court should therefore grant discharge because no misrepresentation could have taken place within the bankruptcy proceedings themselves. Compare (Id. at ¶ 25) (denial of discharge requires false oath "in connection with his bankruptcy case" the case) with 18 U.S.C. § 727(a)(4) (denial of discharge appropriate for false oath made "in or in connection with the case[.]"); see In re

3

Kaufhold, 256 F.2d 181, 185 (3d Cir. 1958) (previous statute's use of "in or in relation to any bankruptcy proceeding" referred to both the bankruptcy proceedings themselves and any integrally connected state proceeding).[1] What's more, Centennial was the real villain for staking out a supposedly inconsistent position (Id. at ¶¶ 36-39), as if Centennial was not entitled to assert that DeMartino was trying to either cheat the company directly by filing a false and worthless lien (and perhaps by convincing the Trustee to enforce the lien against Centennial in collateral proceedings), or else cheat all the creditors by hiding a legitimate and valuable asset. Almost as an afterthought, DeMartino advanced the alternative argument that, even if the liens were valid, and DeMartino had therefore omitted necessary disclosures on his petition, issues of material fact remained on fraudulent intent and materiality. (Id. at ¶ 29).

The bankruptcy court viewed the motion through that prism, proceeding from the premise that DeMartino asserted the liens because he believed they were valid, and asking whether Centennial and the Trustee could show that he deliberately and fraudulently hid the underlying work. But DeMartino had not filed the counter-statement of material facts required by Local Bankruptcy Rule 7056-1. (Summ. J. Decision and Order 3). Apparently DeMartino's attorney had at one point considered filing some sort of sworn document, because he stated in a request for an extension of time that he had prepared an "affidavit" but that DeMartino had not been available to sign it. (Decision Den. Rule 60(b) Mot. 12-13, DeMartino App. B., Ex. 21). Yet no affidavit was ever filed and, crucially, DeMartino's attorney confirmed at oral argument that he saw no need to file a counter-statement because "the facts do not rise to the level of fraudulent intent." (Id. at 14). The bankruptcy court thus determined that the only open question was

---

[1] This theory also ignored the significance of DeMartino's omission of the state lawsuit.

whether the Trustee and Centennial had established their entitlement to judgment as a matter of law. (Summ. J. Decision and Order 7).

The bankruptcy court concluded that they had done so, relying on the following "indicia of fraudulent intent[,]" which it considered "manifold and powerful" (Id. at 9): (1) the mechanic's liens covered a five-to-six-year period, which indicated "enduring and long-term commitments" that an honest debtor would not likely overlook when completing Schedule B; (2) certain liens reflected supposed transactions between DeMartino and his father, and transactions between close family members indicate fraudulent intent; (3) in one instance, DeMartino used an alter ego enterprise to assert one of the liens, and transactions conducted through alter egos also indicate fraudulent intent; and (4) the state lawsuit's allegations of possible fraudulent transfers to DeMartino's wife would warrant "possible investigation by creditors or a trustee[,]" thus DeMartino had motive to conceal that lawsuit even as he acknowledged the existence of six others.[2] (Id. at 8-10). The bankruptcy court thus concluded that the Trustee and Centennial had shown that DeMartino acted with fraudulent intent and further concluded that the misrepresentations met the low standard for materiality in bankruptcy cases. (Id. at 10-11). The court therefore granted summary judgment to the Trustee and Centennial, entering that decision on May 6, 2011. (Id. at 14).

The time to appeal that decision passed. See Fed. R. Bankr. P. 8002. Then, on October 5, 2011, DeMartino, represented by new counsel, Mr. Morrison, filed a motion for relief from the court's grant of summary judgment under Rule 60(b). (Rule 60(b) Mot., DeMartino App. B, Ex. 19). DeMartino relied on Rule 60(b)(1), arguing that the absence of a Rule 7056-1 statement

---

[2] The court might have added that the allegations of the New York lawsuit arguably call into question DeMartino's claim to have received $10,000 in annual income in 2007 and 2008 in his Statement of Financial Affairs, another possible reason to conceal its existence.

was the result of his attorney's "excusable neglect." (Id. at 5). Although his papers avoided the question, at oral argument Morrison intimated that Williams was unaware of Rule 7056-1. (Arg. Tr. 5-6, 11, June 19, 2012, ECF No. 1-8). He also asserted that Williams' failure to file a Rule 7056-1 was the result of a long-term illness. (Reply Supp. Rule 60(b) Mot. ¶ 11, DeMartino App. A, Ex. 8, ECF No. 11-1). On February 10, 2012, DeMartino supplemented his Rule 60(b) motion with a motion to reopen the proceedings. (Am. Mot. Reopen, ECF 1-4).

After hearing argument, Judge Feller entered three separate documents: (1) the afore-cited decision denying relief under Rule 60(b) (DeMartino App. B, Ex. 21); (2) an order denying relief under Rule 60(b) (DeMartino App. A, Ex. 10); and (3) an order denying the motion to reopen (ECF No. 1-9). That last order expressly cross-referenced several other filings, including the court's denial of relief under Rule 60(b): "Whereas, on December 26, 2012, the Court entered an Order denying the Debtor's Rule 60(b) Motion; it is accordingly found and concluded, that grounds do not exist to reopen the Debtor's Chapter 7 case[.]" (Id. at 2). All three documents were entered on December 26, 2012.

## II

DeMartino, again represented by new counsel, Mr. Vilella, filed a Notice of Appeal on January 9, 2013, the last day before time expired under Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 8002. (ECF No. 1). The Notice of Appeal referred to "the Decision entered in this action on December 26, 2012[,]" a formulation the Trustee and Centennial describe as "cryptic." (Appellees Br. 16, ECF No. 13). After filing the Notice of Appeal, attorney Vilella timely filed a Designation of Record pursuant to Bankruptcy Rule 8006. (ECF No. 1-10). That Designation of Record listed ten items, including the order denying the motion to reopen, but not the order or decision denying relief under Rule 60(b).

Shortly thereafter, DeMartino formally relieved Vilella (Order Subst. Att'y, ECF No. 8). DeMartino's next appellate attorney, Mr. Norton, correctly realized that DeMartino's appeal would benefit from an expanded record – more than that, he evidently realized that the absence of the Rule 60(b) decision could result in summary dismissal under In re Harris, 464 F.3d 263 (2d Cir. 2006) unless he took steps to fix the oversight. Accordingly, before he also withdrew from the representation (Order Mot. W'draw, ECF No. 25), Norton attached twenty-two exhibits as an appendix to DeMartino's opening brief and filed a "Supplemental Designation of Contents for Record." (DeMartino App. B, Ex. 12). That supplemental designation listed both the bankruptcy court's order and its decision denying relief under Rule 60(b), along with various additional pleadings and motion papers.

The Trustee and Centennial loudly protest this procedure, insisting that DeMartino cannot supplement the record in this fashion without first moving for leave to do so under Bankruptcy Rules 8011 and 9006. (Appellees Br. 12-14). Appellees therefore contend that the court should not consider any of the materials filed in DeMartino's appendix unless they were listed in his original Designation of Record. (Id. at 12). More drastically, appellees also contend that: (1) we lack jurisdiction to review the bankruptcy court's denial of DeMartino's Rule 60(b) motion because he has not "properly appealed" that decision (Id. at 3, 10, 15-16); or (2) we should dismiss the appeal for DeMartino's noncompliance with Rule 8006. (Id. at 3-4, 14).

## JURISDICTION, SUMMARY DISMISSAL, CONTENTS OF RECORD, AND STANDARD OF REVIEW

The Court first addresses the Trustee's and Centennial's jurisdictional argument that DeMartino's deficient Rule 8006 Designation of Record along with the "cryptic" Notice of Appeal insulates the bankruptcy court's denial of Rule 60(b) relief from review; we then address appellees' closely related argument that we should dismiss the appeal for DeMartino's failure to

7

comply with Rule 8006; and then briefly address their argument that the record consists only of those materials listed in DeMartino's original Designation of Record. We disagree with the first two arguments and need not decide the third.

There are a few principles in play. We first note that the Court exercises jurisdiction under 28 U.S.C. § 158(a) and that the Bankruptcy Rules govern the proceedings. Bankruptcy Rule 8001(a) states that a party appealing from the order of a bankruptcy court must file a notice of appeal within the fourteen-day time limit allowed by Rule 8002(a). That requirement is jurisdictional. Siemon v. Emigrant Sav. Bank (In re Siemon), 421 F.3d 167, 169 (2d Cir. 2005). In addition, even a timely notice of appeal must (as the term implies) provide sufficient notice as to what order is under appeal; that requirement is also jurisdictional.[3] Cf. Bugnacki v. Rzasa ex rel. Estate of Kozlowski (In re Bugnacki), 528 F. App'x 30, 32 (2d Cir. 2013) (under Federal Rule of Appellate Procedure 3 "[the court's] jurisdiction is limited by the wording of the notice." (quoting New Phone Co., Inc. v. City of New York, 498 F.3d 127, 130 (2d Cir. 2007))).

In contrast, the requirement of a timely designation of record under Rule 8006 is not jurisdictional. See Lynch v. United States (In re Lynch), 430 F.3d 600, 603 (2d Cir. 2005) ("Filing a Designation and Statement is mandatory. But Rule 9006(b)(1) permits [that filing] to be accepted notwithstanding a missed deadline."). That is a critical distinction because, where a bankruptcy appellant has not complied with Rule 8006, the Second Circuit requires the district courts to carefully consider whether dismissal is appropriate. Compare id. (failure to file timely designation record is fatal, but not if appellants can demonstrate excusable neglect); with In re Harris, 464 F.3d at 272 (failure to include a required component of the record in an otherwise

---

[3] The Notice of Appeal filed with this Court designates the Court of Appeals, not the District Court, as the court to which appeal is taken. However, neither party has briefed whether that designation renders the Notice defective under Bankruptcy Rule 8001 or whether that defect would present a jurisdictional bar (we suspect not). Therefore, we proceed.

sufficient Rule 8006 designation justifies dismissal only if the court first considers whether that failure was due to bad faith or persistent negligence, considers lesser sanctions, considers providing errant litigant with opportunity to "rectify the problem[,]" and provides opportunity for litigant to explain the omission). In view of the fact that courts in other circuits readily dismiss for similar violations of the Bankruptcy Rules, see Lopez v. Long (In re Long), 255 B.R. 241, 245 (B.A.P. 10th Cir. 2000) (nonconforming appendix), we think that In re Harris and, to a lesser extent, In re Lynch both demonstrate that the Second Circuit disfavors the "harsh sanction" of procedural dismissal. In re Harris, 464 F.3d at 272.

The Court now moves to the Trustee's and Centennial's arguments. Appellees first point out that DeMartino's Notice of Appeal refers only to "the Decision entered . . . on December 26, 2012[,]" while his Designation of Record lists only the order denying the motion to reopen. According to the Trustee and Centennial, his appeal therefore embraces only the motion to reopen, while leaving the Rule 60(b) motion out in the cold. This matters, say appellees, because if DeMartino has not properly appealed the Rule 60(b) motion, he has also made it impossible for this Court to review the denial of the motion to reopen, which the bankruptcy court could only deny after rejecting the Rule 60(b) motion. As appellees put it: "[t]he Bankruptcy Court properly denied Debtor's Motion to Reopen because granting said motion after the denial of Debtor's 60(b) motion would have been moot." (Appellee Br. 11).

It is a clever argument, but too clever by half, because it implicitly concedes that the two motions are so closely connected that they should be fairly considered a single decision. As DeMartino correctly explains:

> Reopening the bankruptcy case would have had meaning and purpose only if the bankruptcy court had granted the motion for relief under Rule 60(b). The bankruptcy court's decision with respect to reopening the case followed naturally

from and was integrally connected with its main decision to deny relief under Rule 60(b).

(Appellant Reply Br. 2, ECF No. 14). That certainly appears to be Judge Feller's view, as indicated in the transcript of oral argument (which DeMartino properly designated) (Arg. Tr. 14-16), and in the final "[w]hereas" recital in his order denying the motion to reopen. The fact that the court filed the documents separately appears to be largely an artifact of the applicable rules, not unlike the manner in which district courts file judgments separately from opinions. See Fed. R. Bankr. P. 7052, 9021. We therefore do not consider the Notice of Appeal unduly cryptic, especially since Judge Feller's decision denying Rule 60(b) relief is the only one of the three documents he expressly captioned as a "Decision." And, in light of our interpretation of the Notice of Appeal, we do not think that DeMartino's omission of the actual Rule 60(b) order or decision from his Designation of Record is so significant that it places the bankruptcy court's denial of Rule 60(b) relief outside the scope of our jurisdiction (though it may be reason for summary dismissal, an issue we take up shortly).

There is another potential quirk in appellees' jurisdictional argument that persuades us that this appeal must necessarily extend to the bankruptcy court's denial of the Rule 60(b) motion. The Trustee and Centennial, when arguing for dismissal, have framed the problem thusly: "[DeMartino] has not properly appealed the 60(b) Order . . . [t]hus [DeMartino] has made it impossible to challenge the Bankruptcy [Court]'s discretion in denying the Reopen Order." (Appellee Br. 15). But if we do not find the bad faith or persistent negligence cited as a reason to dismiss by In re Harris (and we do not, see infra p. 12), then we cannot summarily dismiss the appeal, nor fairly maintain that DeMartino has made his own challenge impossible. Thus we would still have the obligation to review the order denying the motion to reopen, which everyone

agrees has been properly appealed. But that order is expressly conditioned on the denial of Rule 60(b) relief.

What then? Probably remand, because it would be as if the bankruptcy court, despite conditioning the denial of the motion to reopen on the denial of Rule 60(b) relief, had never addressed the Rule 60(b) motion in any detail at all. We could not determine whether the court applied the correct legal standard or, indeed, any standard whatsoever. Thus, once we determined that we could not summarily dismiss, we seemingly could not affirm. Cf. Sigala v. Spikouris, 345 F. App'x 636, 637-38 (2d Cir. 2009) (remanding for further explanation of the court's denial of Rule 60(b) motion). It makes no sense for us to remand to the bankruptcy court for further explanation of conclusions the court has already explained, but that this Court determined were set forth in a decision outside the scope of our review. Remand would also nonsensically punish appellees for fairly objecting to an incomplete Designation of Record. All the more reason to simply cut the knot. We hold that there is no jurisdictional bar to this Court's review of the Rule 60(b) decision.

The Trustee and Centennial also argue that the Court should dismiss the appeal because DeMartino failed to comply with Bankruptcy Rule 8006. That contention has more bite, but the Court is not convinced. We first note that In re Harris, not In re Lynch, provides the appropriate framework for deciding whether to dismiss this appeal. In In re Lynch, 430 F.3d at 602-03, the appellant filed a facially deficient designation of record listing only the trial transcript. In In re Harris, 464 F.3d at 268, the appellant filed a designation of record that was not facially deficient, but that omitted a necessary part of the record (that is, one of the necessary transcripts). DeMartino's comparatively minor transgression is analogous to the omission in In re Harris, not the total noncompliance in In re Lynch. Specifically, he timely filed an initial Designation of

Record that facially complied with Bankruptcy Rule 8006, but omitted a required component of the record: the bankruptcy court's sixteen page opinion denying the Rule 60(b) motion.

Accordingly, applying In Re Harris, the Court is hesitant to invoke the harsh sanction of dismissal unless we first find that this failure was due to bad faith or persistent negligence. The Trustee and Centennial urge us to make that finding, and there is some support for that position, even in the limited record appellees wish to hold us to. Yet DeMartino ultimately took steps to correct the deficiency, in effect seizing the opportunity to "rectify the problem" that In re Harris, 464 F.3d at 272, strongly advises the district courts to afford an errant litigant. In the Court's view, counsel's efforts to fix the problem do not evince bad faith; the worst that can be said is that counsel should have first sought leave to supplement DeMartino's Designation of Record via motion under Bankruptcy Rules 8011 or 9006.[4] That would have freed appellees to object in the context of that motion, rather than get bogged down with this dispute in their briefing on the merits. But, because we affirm, that diversion of resources has not prejudiced appellees.

The Court holds that the appeal encompasses both the order denying the motion to reopen and the order and decision denying relief under Rule 60(b) and declines to summarily dismiss the appeal. Those determinations leave open the relatively minor question of which other items in

---

[4] In support of that view, we note that Norton appeared in the case just as the Court was about to formally dismiss the appeal. (Conference Mins., ECF No. 4). He was therefore required to quickly familiarize himself with the case before filing his briefing and did so, with the Court's leave, within approximately forty days. (Letter Appl. Extension Time, ECF No. 10). In preparing the briefing, counsel apparently perceived that his well-crafted but ultimately unsuccessful attack on the bankruptcy court's Rule 60(b) decision would falter at the outset if he did not first put that decision in the record. In other words, he corrected a perceived mistake not of his own making. In addition, Villela, who filed the original Designation of Record, had replaced yet a third attorney (presumably also on short notice, given the fourteen-day deadline in Bankruptcy Rule 8002). For all we know, Vilella might also have perceived the problem and taken steps to correct it, but he was relieved as counsel and did not prosecute the appeal. In short, we do not see the conduct of either attorney as particularly blameworthy and certainly do not think their actions justify the drastic sanction of outright dismissal.

DeMartino's supplemental Designation of Record should be considered part of the record. The Court will not address that question because, in our view, the additional documents do not affect the result. Although a helpful aid to our understanding of the procedural history, DeMartino's supplemental materials (mostly pleadings and motion papers) do not incline the Court towards reversal.

Having addressed the extensive skirmishing between the parties regarding the scope of the appeal, and further determined that we need not address their skirmish over the contents of the record, the Court may now (at last) state the standard of review. Both the bankruptcy court's denial of the Rule 60(b) motion and its denial of the motion to reopen are reviewed for abuse of discretion. See, e.g., Gey Assocs. Gen. P'ship v. 310 Assocs. (In re 310 Assocs.), 346 F.3d 31, 34 (2d Cir. 2003) (Rule 60(b) motion); Smith v. Silverman (In re Smith), 645 F.3d 186, 189 (2d Cir. 2011) (motion to reopen). An abuse of discretion results when the court "'applies legal standards incorrectly or relies upon clearly erroneous findings of fact, or proceed[s] on the basis of an erroneous view of the applicable law.'" In re Harris, 464 F.3d at 268 (alterations in original) (quoting Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 398 (2d Cir.2004)).

## ANALYSIS

Rule 60(b) permits relief from an order of judgment on grounds of "mistake, inadvertence, surprise, or excusable neglect." Rule 60(b) relief is considered "extraordinary," appropriate only in "exceptional circumstances." Motorola Credit Corp. v. Uzan, 561 F.3d 123, 126 (2d Cir. 2009) (quoting Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008)). In seeking relief, DeMartino claimed that his failure to file the counter-statement of material facts required by Local Bankruptcy Rule 7056-1 doomed what would have been successful opposition to the Trustee's and Centennial's motion for summary judgment. He further claimed that this

failure resulted from the excusable neglect of his attorney in the bankruptcy proceedings: that counsel did not realize he was required to file that statement and was too ill to do so.

The bankruptcy court assessed these claims under the framework set forth in Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380 (1993). That decision relaxed a stringent interpretation given by many courts to Bankruptcy Rule 9006(b) – that attorney error never constitutes "excusable neglect" under that rule – instead requiring the courts to consider several factors to determine whether counsel's neglect is excusable. Id. at 395. Because Pioneer analogized to Rule 60(b), most courts, including the Second Circuit, have applied the same standard to Rule 60(b) motions based on claims of attorney neglect, inadvertence, or ignorance of the rules. See Canfield v. Van Atta Buick/GMC Truck, Inc., 127 F.3d 248, 250 (2d Cir. 1997). Canfield, 127 F.3d at 250-51, requires courts in the Second Circuit to strictly apply the Pioneer factors to such motions:

> [W]e do not believe that the possibility that a court may properly find excusable neglect on such grounds alters the principle that failure to follow the clear dictates of a court rule will generally not constitute such excusable neglect. We are not alone in that view. And, we have not hesitated to reiterate the old rule at the same time that we have applied Pioneer's equitable test in determining whether failure to comply with a filing deadline constituted excusable neglect. Where . . . the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the Pioneer test.

Canfield, 127 F.3d at 250-51; See also In re Lynch, 430 F.3d at 603-04; Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.), 419 F.3d 115, 122 (2d Cir. 2005) ("We have 'taken a hard line' in applying the Pioneer test" (quoting Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355, 368 (2d Cir. 2003))). Accordingly, although DeMartino is right to note that courts "frequently" find excusable neglect based on attorney negligence, courts more frequently do not, and only rarely do so when that negligence consists of failing to comply with a clear rule. See generally 11 Wright & Miller, Federal Practice and Procedure § 2858 (3d ed. 2002).

In reviewing DeMartino's motion, the bankruptcy court expressed some skepticism with DeMartino's assertion that his attorney did not understand Rule 7056-1. (Decision Den. Rule 60(b) Mot. 12). But the court did not reject that assertion outright. Rather, the court assumed the truth of that claim for purposes of analysis and shifted its primary focus to the third <u>Pioneer</u> factor (<u>Id.</u> at 8, 12-15): the "reason for the delay, including whether it was within the reasonable control of the movant[.]" <u>Pioneer</u>, 507 U.S. at 395.

Before we address the bankruptcy court's assessment of that factor we first consider the court's observation that "[i]t is ironic that the Debtor does not even submit as an exhibit the very E.D.N.Y. LBR 7056-1 counterstatement he contends would have defeated the Plaintiffs' Motion[.]" (Decision Den. Rule 60(b) Mot. 15). In our view, that omission was not merely ironic, it was fatal. The references in <u>Pioneer</u>, <u>Lynch</u>, and similar cases to "delay" refers to the delay in filing whatever document would have purportedly avoided the entry of the challenged judgment or order: in <u>Pioneer</u>, 507 U.S. at 383, the proof of claim; in <u>Lynch</u>, 430 F.3d at 602, the Rule 8006 designation of record; in <u>Canfield</u>, 127 F.3d at 249, opposition papers to a motion for summary judgment. Here, as the Trustee and Centennial point out (Appellees Br. 21, 23), we have not delay so much as continued non-compliance with the rule. Although the cases have not always insisted that the litigant seeking Rule 60(b) relief actually submit the filing that would have supposedly changed the result, we think the errant litigant should do so (at least as an exhibit to the motion) where the litigant claims that he would have been able to show a genuine dispute of material fact on summary judgment if counsel's neglect had not robbed him of the opportunity. See <u>Langdon v. Proper</u>, 1991 WL 263554, at *2 (N.D.N.Y. Dec. 9, 1991) ("Particularly where, as here, plaintiff offers nothing but speculation about the evidence he and his father could provide to refute defendants' factual assertions, the court is not convinced that

vacating the judgment and permitting reargument of the summary judgment motion would bring a different result.").

After all, Rule 60(b) motions may be decided on the basis of whether the movant's underlying position has merit. See, e.g., id. ("A Rule 60(b) movant cannot prevail simply by showing that the district court properly could vacate its previously entered judgment . . . Plaintiff at bar fails to provide facts on the motion to vacate which demonstrate that summary judgment should not have been granted."); PDS Eng'g & Constr., Inc. v. Link Corp. (In re Lyman), 254 B.R. 517, 520-21 (Bankr. D. Conn. 2000) (finding no excusable neglect under Rule 60(b) but also determining that "the motion is not sustainable in any event" because the proposed statement of facts created no genuine dispute). Courts need not permit a litigant to sidestep that inquiry by focusing solely on its excuse for an untimely filing while avoiding the factual substance (if any) of that filing, least of all when the court granted summary judgment based on its conclusion that the litigant had committed fraud in the proceedings.

Accordingly, in this case, the Court concludes that the bankruptcy court could have required DeMartino to present the counterstatement of material facts that he claims would have salvaged the case, at least as an exhibit to his Rule 60(b) motion. DeMartino instead tried to establish the existence of a dispute of fact through statements and arguments of counsel in his memorandum of law – the same elusive approach that, in part, lost the case in the first place. (Mem. Supp. Rule 60(b) Mot. 7-12, DeMartino App. B, Ex. 20). He did attach a one-paragraph verification to that memorandum of law generally averring that the memorandum was truthful, but that is not a sufficient substitute for the specific point-by-point assessment of the facts and

evidence that Rule 7056-1 is designed to elicit.[5] DeMartino still has not proposed a counter-statement on appeal, and we doubt that this continued failure is the fault of appellate counsel, who is now the third attorney (fourth, if you include Vilella) not to have prepared that document.

The bankruptcy court could therefore have denied the motion on the basis of DeMartino's failure to propose a persuasive Rule 7056-1 counter-statement, and we affirm on that basis. See, e.g., Freeman v. Journal Register Co., 452 B.R. 367, 369 (Bankr. S.D.N.Y. 2010) ("The [district court] may affirm on any ground that finds support in the record, and need not limit its review to the bases raised or relied upon in the decisions below."). For the same reason, the court did not abuse its discretion in denying the motion, even if (as DeMartino argues) the court should have applied the standard set forth in American Alliance Insurance Co., Ltd. v. Eagle Insurance Co., 92 F.3d 57 (2d Cir. 1996). That case, applying the standard for Rule 60(b) relief from default judgment, instructs the district court to consider whether the Rule 60(b) movant has made some showing of a "meritorious defense." Id. at 61; see also DiGeronimo v. Weissberg (In re DiGeronimo), 354 B.R. 625, 632 (Bankr. E.D.N.Y. 2006) (bankruptcy court considered motion to vacate summary judgment under the same standard as a motion to vacate default and thus required showing of meritorious defense).

---

[5] Moreover, even if we thought that verification sufficient, the supposed facts defeating summary judgment outlined in the memorandum were not so obviously compelling that the bankruptcy court was required to vacate its earlier decision. On the contrary, most miss the mark. For example, DeMartino claimed in his memorandum that the state lawsuit was voluntarily dismissed, and thus the allegations of the lawsuit were never proven. (Mem. Supp. Rule 60(b) Mot. 5, 11). Yet Judge Feller granted summary judgment not because the allegations were true, but because they warranted additional investigation; hence the omission of the lawsuit indicated deliberate fraud, not mere oversight. Similarly, DeMartino claimed that he did not disclose the liens in his petition because they had not yet been filed. (Id. at 9-10). But the bankruptcy court never determined that the failure to disclose the existence of the liens was by itself fraudulent, nor the failure to amend the petition after the fact. Rather, the bankruptcy court reasoned that the liens showed that DeMartino believed someone owed him money – lots of money – before he filed the petition. Yet he did not disclose that underlying debt even though Schedule B requires the debtor to list "other liquidated debts[.]"

Rather than deny the motion on that basis, the bankruptcy court assumed that, absent counsel's neglect, DeMartino could have filed a persuasive Rule 7056-1 statement at some point during the pendency of the summary judgment motion, and simply analyzed the excuse offered for counsel's neglect under Pioneer.[6] The court further concluded that DeMartino could not show good faith, and determined that the remaining factors were insufficient to justify relief. We think the bankruptcy court's focus on the third Pioneer factor was appropriate, and its conclusions well within its discretion. See In re Lyman, 254 B.R. at 520 ("Even more significant than the length of the delay . . . is the reason for the delay. . . . [I]t is the responsibility of [the client] and its counsel to be familiar with the rules of procedure[.]"). The Court therefore affirms on that basis as well.

As the bankruptcy court explained, DeMartino and his then-attorney – even if they had no idea Rule 7056-1 existed when the Trustee and Centennial first brought their motion – had ample time to discover the rule. More importantly, as the bankruptcy court meticulously documented (Decision Den. Rule 60(b) Mot. 12-14), counsel was specifically and repeatedly warned to comply with the rule, both by references to the rule in Centennial's moving papers and by the court itself. See Canfield, 127 F.3d at 251 (defendant informed by the papers that failure to file opposition conforming with local rule would be deemed consent to relief sought by moving party). Even worse, DeMartino's attorney had disclosed that he had prepared an "affidavit" but that DeMartino had not yet been able to sign it, then explained that DeMartino

_____

[6] DeMartino's argument on appeal that substitution of counsel justifies his delay in bringing the Rule 60(b) motion is therefore inapposite. (DeMartino Br. 18-19). Although the bankruptcy court briefly noted that DeMartino was required to bring the Rule 60(b) motion within a "reasonable" time, see Fed. R. Civ. P. 60(c)(1), the court did not pursue that issue. But, even where substitution of counsel is offered as an excuse for a delayed filing, we do not think a bankruptcy court must necessarily accept it under these circumstances. See In re Controlled Release Tech., Inc., 163 B.R. 519, 522 (Bankr. N.D. Ill. 1994) ("Defendants' game of musical lawyers obviates any notion of excusable neglect.").

would instead oppose summary judgment because Centennial's statement of material facts did not adequately demonstrate fraudulent intent. That is damning: it suggests that both counsel and client realized their obligation under the rule and deliberately shirked it for tactical reasons. See Delacruz v. Stern, 166 F.3d 1200 (2d Cir. 1998) (tactical decision is not grounds for Rule 60(b) relief). We need not inquire as to whether counsel or client made that fateful decision to conclude that it destroys any claim of excusable neglect. Finally, the bankruptcy court rejected the claim that illness excused counsel's neglect. The court pointed out the implausibility of a seven-month claim of illness when viewed alongside an incongruous letter stating that counsel had been sick for weeks, not months. (Decision Den. Rule 60(b) Mot. 14-15).

The bankruptcy court did not abuse its discretion in denying the motion for relief under Rule 60(b) and therefore did not abuse its discretion when it declined to reopen the case.

## MOTION TO DISQUALIFY

DeMartino moves pro se for a motion seeking to disqualify Gottesman Wolgel.[7] (Pro Se Letter Appl., ECF 15). He has provided an opinion written by the Hon. Richard B. Lowe, III, denying cross-motions for summary judgment in the matter of TADCO Construction Corp. v. Gottesman, Wolgel, Malamy, Flynn & Weinberg, P.C., et al., from which we briefly recite the relevant background. (TADCO Summ. J. Op., ECF No. 15-2). Well before this bankruptcy proceeding, Centennial acted as surety for TADCO Construction Corp. ("TADCO"), a construction corporation owned principally by DeMartino. Gottesman Wolgel represented Centennial in extensive multi-suit litigation among DeMartino, TADCO, various subcontractors, and the Dormitory Authority of the State of New York. The full history of that litigation is unimportant. What is important is that Centennial eventually won, and filed restraining notices

---

[7] We call the motion pro se because, even though De Martino was represented when he filed the motion, counsel had wisely declined to make the motion on his behalf. (ECF No. 17).

on DeMartino, TADCO, and the Dormitory Authority (one of TADCO's major clients). Centennial agreed to release those liens in exchange for varied consideration, including the transfer of real estate, and TADCO's promise to pay the judgment in installments. Thereafter, Centennial determined that defendants were in breach of that agreement. Accordingly, in March 2006, Centennial – more precisely, an associate at Gottesman Wolgel under the supervision of a partner – filed a second restraint on the Dormitory Authority, without the court approval required by C.P.L.R. § 5222. TADCO filed an abuse of process lawsuit against Gottesman Wolgel. Judge Lowe's opinion denied summary judgment to both TADCO and Gottesman Wolgel. We have not been advised whether the suit is still ongoing or whether the state court made any finding that Gottesman Wolgel had actually committed abuse of process.

In moving to disqualify Gottesman Wolgel, DeMartino claims no direct conflict of interest (Gottesman Wolgel never represented him or his companies). Rather, DeMartino claims that Gottesman Wolgel has "an inherent conflict in protecting its own interest as a defendant and those of [Centennial.]" (Pro Se Letter Appl. 3). He does not specify the nature of this conflict, instead citing case law for the general and unobjectionable proposition that a lawyer must be free of competing interests. He also claims in a subsequent letter that Gottesman Wolgel must be disqualified under the advocate-witness rule. (Pro Se Supplemental Letter 2, ECF No. 18).

There are a few problems with this motion. First, it was not properly set before us on motion of counsel. Second, DeMartino has waived the issue, because the facts upon which he bases the motion were within his knowledge throughout the proceedings in the bankruptcy court. See Whiting v. Old Brookville Bd. of Police Comm'rs, 4 F. App'x 11, 14 (2d Cir. 2001) (party that did not seek disqualification below waived objection to attorney's participation in trial

(citing <u>Tucker v. Outwater</u>, 118 F.3d 930, 935 (2d Cir.1997))). Third, even if we indulged in the bold assumption that the motion is appropriate for review, we would deny it.

The lawyer-witness rule has no application in this proceeding, because DeMartino's discharge does not hinge on testimony regarding the actions of a Gottesman Wolgel associate and supervising partner in a state court proceeding pre-dating the bankruptcy petition. <u>See Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Grp.</u>, 937 F. Supp. 276, 281 (S.D.N.Y. 1996) ("[T]o disqualify an attorney on the basis of the advocate-witness rule, a party must demonstrate that the testimony is both necessary and substantially likely to be prejudicial [to the client.]"). What would be the relevance of such testimony? That DeMartino's fraud can be explained as fair retaliation? The Court does not view that testimony as necessary or appropriate.

Moreover, the interests of client and counsel in this proceeding are in perfect lockstep. Centennial commenced this adversary proceeding because it wants DeMartino's company to pay a judgment. Gottesman Wolgel's defense of the state abuse of process suit provides it with no incentive whatsoever to frustrate that goal. Accordingly, Gottesman Wolgel has quite assiduously – and, thus far, successfully – vindicated Centennial's interests throughout this case. There is no conflict, and no appearance of conflict. The motion is denied.

The Court affirms, and the Clerk of Court is directed to close the case.

SO ORDERED.

Dated: Brooklyn, New York                         /s/ Judge Raymond J. Dearie
      April 17, 2014

                                            RAYMOND J. DEARIE
                                            United States District Judge